UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------- X
GEMMA MOORE,

                     Plaintiff,

    -against-

KINGSBROOK JEWISH MEDICAL CENTER,

                     Defendant.
--------------------------------------- X
JILLIAN JOHN,

                     Plaintiff,

    -against-

KINGSBROOK JEWISH MEDICAL CENTER,

                     Defendant.
--------------------------------------- X

**MEMORANDUM AND ORDER**

11-CV-3552(KAM)(JO)

11-CV-3624(KAM)(JO)

**KIYO A. MATSUMOTO**, United States District Judge:

        Defendant Kingsbrook Jewish Medical Center
("Kingsbrook") has objected to certain discovery rulings made by
Magistrate Judge James Orenstein on February 2, 2012 (the
"Discovery Order") (i) denying Kingsbrook's requests to conduct
forensic examinations of the computers of plaintiffs Gemma Moore
("Ms. Moore") and Jillian John ("Ms. John") and to compel Ms.
Moore and Ms. John to sign releases permitting Kingsbrook to
obtain certain e-mails from the plaintiffs' e-mail providers;
(ii) directing the parties to confer regarding a reasonable
limitation on who may have access to the names of participants
in Ms. John's "su-su"; and (iii) denying Kingsbrook's motion to

compel the production of notes taken by Ms. John during her deposition on January 27, 2012. (*See* ECF No. 18, Minute Entry for Proceedings held on 2/2/2012; ECF No. 19, Transcript of Proceedings held on 2/2/2012 ("2/2/2012 Tr."); ECF No. 20, Appeal of Magistrate Judge Decision, filed 2/16/2012 ("Def. Mem.").)[1] The court has reviewed the Discovery Order and the parties' submissions and finds that the Discovery Order is neither clearly erroneous nor contrary to law. Accordingly, Kingsbrook's objections are denied and Magistrate Judge Orenstein's February 2, 2012 Discovery Order is affirmed in its entirety.

## Background

The facts relevant to the present request for review are as follows. On July 20, 2011, Ms. Moore filed a lawsuit against Kingsbrook alleging employment discrimination and retaliation, pursuant to Title VII of the Civil Rights Act of 1964. (ECF No. 1, Complaint filed 7/20/2011 ("Compl.").) On July 26, 2011, Ms. John and Kyron Moore ("Mr. Moore"), Ms. Moore's son, filed two separate lawsuits against Kingsbrook, also alleging employment discrimination and retaliation, pursuant to Title VII of the Civil Rights Act of 1964. (Case

---

[1] Unless otherwise indicated, the documents cited herein are taken from the docket sheet and from the parties' submissions in Case No. 11-cv-3552(KAM)(JO), *Gemma Moore v. Kingsbrook Jewish Medical Center*. Identical documents were filed in Case No. 11-cv-3642(JO), *Jillian John v. Kingsbrook Jewish Medical Center*.

No. 11-cv-3624, ECF No. 1, Compl. filed 7/26/2011 (Jillian

John); Case No. 11-cv-3625, ECF No. 1, Compl. filed 7/26/2011

(Kyron Moore).)  Notably, Ms. John's complaint alleged that the

purported reason given for her termination was that she was

running a "su-su."[2]  (Case No. 11-cv-3624, ECF No. 1, Compl.

filed 7/26/2011, at 9.)  Ms. John alleged that this reason was

pretextual, stating, "I could not understand why I was in danger

of losing my job over a practice that has been rampant in

Kingsbrook Jewish Medical Center/Rutland Nursing Home for

decades.  I knew right then and there that I was being

terminated for more than just running the Su-su."  (*Id.*)

On October 6, 2011, Magistrate Judge Orenstein held a

joint conference in all three actions and ordered that discovery

would proceed in a coordinated fashion in the three cases, but

that the lawsuits were "not consolidated in any other way."

(ECF No. 8, Minute Entry for Proceedings held on 10/6/2011.)

Thereafter, discovery commenced.

On November 1, 2011, plaintiffs in all three actions

filed identical motions for "permissive joinder of parties."

(*See, e.g.*, ECF No. 10, Plaintiff's Motion for Permissive

Joinder of Parties, filed 11/1/2011.)  Construing the parties'

---

[2] According to Ms. John, a "su-su" is "[t]he pooling of money from different individuals which is then paid out on a weekly or bi-weekly basis to the individuals involved until each person receives their draw.  This is a cultural way of saving by the African American and it allows us to buy houses and send our children to school."  (Case No. 11-cv-3624, ECF No. 1, Compl. filed 7/26/2011, at 9.)

motions as requests to consolidate the three actions pursuant to
Federal Rule of Civil Procedure 42(a), on November 17, 2011, the
court denied the motions without prejudice, reasoning that "the
three actions involved different circumstances under which the
plaintiffs left the defendant's employment" and "the risk of
confusing the jury and prejudice to the defendant would outweigh
any judicial economy of consolidating the actions for trial."
(Order dated 11/17/2011.)  Nevertheless, the court confirmed
that discovery in the three actions was to proceed jointly,
under the supervision of Magistrate Judge Orenstein.  (*Id.*)

A.   **E-mail Discovery from Ms. Moore and Ms. John**

On November 1, 2011, Kingsbrook served Ms. John, Ms.
Moore, and Mr. Moore with document requests.  Kingsbrook asked
the three plaintiffs to produce, *inter alia*, e-mail
correspondence concerning their experience at Kingsbrook, the
instant litigation, and any subsequent efforts to secure
employment.  (*See generally* ECF Nos. 20-9, 20-10, Defendant's
First Request for Production of Documents.)  Neither Ms. John
nor Ms. Moore produced any e-mails pursuant to these requests.[3]
(*See generally* ECF Nos. 20-11, 20-12, Plaintiff's Response to
Defendant's First Request for Production of Documents.)

---

[3] It is not clear from Kingsbrook's submissions on the instant appeal whether
Mr. Moore produced any responsive e-mails.  In any event, Mr. Moore's
responses to Kingsbrook's discovery demands do not appear to be at issue in
the instant discovery dispute.

Kingsbrook took Ms. Moore's deposition on January 25, 2012 and Ms. John's deposition on January 27, 2012.  During Ms. Moore's deposition, she stated that she and Ms. John did not exchange e-mails, but rather "[c]all each other on the phone." (ECF No. 20-13, Transcript of Deposition of Gemma Moore, dated 1/25/2012 ("Moore Dep."), at 273.)  Similarly, Ms. John testified during her deposition that she had not written any e-mails to anyone concerning the case.  (ECF No. 20-5, Transcript of Deposition of Jillian John, dated 1/27/2012 ("John Dep."), at 297.)

On February 2, 2012, Magistrate Judge Orenstein held a status conference to address the parties' discovery disputes. Kingsbrook renewed its request for the production of the plaintiffs' e-mails.  (*See* ECF No. 19, 2/2/2012 Tr. at 6.) Further, Kingsbrook sought permission to conduct a forensic examination of Ms. Moore's and Ms. John's computers to verify that they had no responsive e-mails.  (*Id.* at 4, 9.)

Magistrate Judge Orenstein denied Kingsbrook's request for a forensic examination.  (*Id.* at 9.)  Instead, he ordered both Ms. Moore and Ms. John to search their e-mail accounts and produce e-mails they had exchanged, or any e-mails they had exchanged with Mr. Moore, "concerning Kingsbrook Jewish Medical Center, their jobs at Kingsbrook Jewish and any of these cases and the claims in these cases."  (*Id.* at 6-8.)  He further

ordered Ms. Moore and Ms. John to each write a letter verifying that she had looked at each of her e-mail accounts and produced all responsive e-mails. (*Id.* at 7-8.)  In addition, Magistrate Judge Orenstein told Ms. John that if she was not able to access e-mails from an old e-mail account that had been suspended, she "should provide [Kingsbrook] with authorizations, so that they can go to the [e-mail] provider and get [the e-mails] themselves."[4]  (*Id.* at 8.)

On February 9, 2012, Ms. Moore produced two e-mails and a letter stating, "these are the only e-mail communication[s] I have found between Jillian John and myself. There is no e-mail communication between Kyron Moore and me." (ECF No. 20-17, Letter from Gemma Moore to Kristen O'Connor, dated 2/9/2012 ("Moore 2/9/2012 Letter").)  The letter also stated that Ms. Moore had contacted her e-mail provider and was told that there was no way to retrieve old e-mails that had not been saved. (*Id.*)  She reiterated that she and Ms. John "rarely communicated via e-mail." (*Id.*)  In response to two follow-up e-mails from Kingsbrook, Ms. Moore confirmed that she had produced the only e-mails she found between herself and Ms.

---

[4] The minute entry for the status conference reflects that Magistrate Judge Orenstein "directed each plaintiff to provide all emails within certain categories, as set forth on the record, by February 10, 2012, and to provide a letter specifying that they had searched all of their email accounts for such records (including the suspended account Ms. John mentioned) and had provided all emails within the specified categories." (ECF No. 18, Minute Entry for Proceedings held on 2/2/2012.)

John, that she had only ever used two AOL e-mail addresses, and that she did not exchange e-mails with Mr. Moore because they live in the same house.  (ECF No. 20-20, E-mail from Gemma Moore to Kristen O'Connor, dated 2/13/2012 ("Moore 2/13/2012 Letter").)  Ms. Moore refused to execute a consent form authorizing Kingsbrook to subpoena her e-mail provider for her current and deleted e-mails.  (ECF No. 20, Def. Mem. at 11; ECF No. 20-22, E-mail from Gemma Moore to Kristen O'Connor, dated 2/14/2012.)

On February 9, 2012, Ms. John produced one e-mail — which was one of the two e-mails produced by Ms. Moore — and a letter stating that she had contacted her former Internet provider and "was informed that all records of her emails were no longer retrievable." (ECF No. 20-18, Letter from Jillian John to Kristen O'Connor, dated 2/9/2012 ("John 2/9/2012 Letter").)  Ms. John confirmed that "copies of all other emails" between herself and Ms. Moore were enclosed.  (*Id.*)  In response to Kingsbrook's follow-up e-mails, Ms. John confirmed that she had "produced all email that was available" and that her "prior internet provider was not able to retrieve[] documents from their server." (ECF No. 20-21, E-mail from Jillian John to Kristen O'Connor, dated 2/15/2012 ("John 2/15/2012 E-mail").)  Ms. John refused to authorize Kingsbrook to subpoena her Internet provider for her e-mails, but offered instead to set up

a conference call among herself, Kingsbrook, and her Internet

provider.  (*Id.; see also* ECF No. 20, Def. Mem. at 11.)

B.  **Identity of the Participants in Ms. John's "Su-Su"**

On November 1, 2011, Kingsbrook also served Ms. John

with interrogatories.  Kingsbrook's Interrogatory No. 8 asked

Ms. John to, *inter alia*:

> [i]dentify all persons with knowledge or
> information and set forth in detail the
> factual basis for the allegation that "su-
> sus" have been "rampant in Kingsbrook Jewish
> Medical Center/Rutland Nursing Home for
> decades" . . . .

(ECF No. 20-6, Defendant's First Set of Interrogatories to

Plaintiff [Jillian John].)  Kingsbrook's Interrogatory No. 9

asked Ms. John to, *inter alia*:

> identify each person who has participated in
> the "su-su" [that Ms. John was involved in
> while she was employed at Kingsbrook and/or
> Rutland Nursing Home] . . . .

(*Id.*)  Ms. John responded to Interrogatory No. 8 by providing

the names, positions, addresses, and telephone numbers of nine

Kingsbrook employees who engaged in "su-su" activity at

Kingsbrook.  (*See* ECF No. 20-7, Plaintiff's [Jillian John]

Answers to Defendant's First Request of Interrogatories at 6-9.)

Plaintiff responded to Interrogatory No. 9 as follows:

> Plaintiff has never conducted her su-su on
> Kingsbrook's time and never admitted this to
> Defendant.  Plaintiff cannot recall all the
> persons involved in her su-su because
> Plaintiff's record book was stolen out of

> her bag the last day Plaintiff was at work
> at Rutland Nursing Home. Also Plaintiff
> prefers not to list the names of other
> employees because they are currently
> employed by Defendant and Plaintiff fears
> that they will be subjected to the same fate
> as Plaintiff. Plaintiff has already
> provided Defendant's counsel with persons
> who have knowledge about "su-su" at KJMC/RNH
> so that they can conduct their own
> investigation.

(*Id.* at 9.)

During Ms. John's deposition on January 27, 2012, Ms. John provided testimony regarding the individuals she disclosed in response to Kingsbrook's Interrogatory No. 8, and she stated that many of those individuals were still employed at Kingsbrook and engaged in "su-su" activity at the facility. (*See* ECF No. 20-5, John Dep. at 134-41.) However, when Kingsbrook's counsel asked Ms. John to name the individuals who participated in her "su-su," Ms. John declined to do so, stating, "I don't recall, and if I did, I would not mention the name[s] for fear of retaliation." (ECF No. 20-5, John Dep. at 42.)

At the February 2, 2012 status conference, Magistrate Judge Orenstein informed Ms. John that she was required to disclose the names of participants in her "su-su." (ECF No. 19, 2/2/2012 Tr. at 13, 31.) Magistrate Judge Orenstein then explored how to limit the disclosure, and directed Kingsbrook to draft a confidentiality order that would restrict the information "to persons who need to have the information for

purposes of conducting the lawsuit," apparently excluding people within Kingsbrook's Human Resources Department who are not directly involved in defending the litigation.  (*Id.* at 13.) After Kingsbrook objected to such a limitation, Magistrate Judge Orenstein suggested an order limiting disclosure to attorneys' eyes only so as not to draw a division among employees within Kingsbrook.  (*Id.* at 14.)  Kingsbrook's counsel agreed to explore some alternatives with her client and Ms. John, and to propose a confidentiality order to the court.  (*Id.* at 29-31.) Magistrate Judge Orenstein then ordered the parties, "[i]f you just can't agree on it, then bring it to me," and further directed that in such circumstances, Kingsbrook must submit a written justification as to which Kingsbrook personnel would need the information to defend the lawsuit.  (*Id.* at 14, 31.) The minute entry for the status conference reflects that the court granted Kingsbrook's motion to compel Ms. John to identify employees who participated in her "su-su," "subject to an appropriate protective order as to which the parties will confer."  (ECF No. 18, Minute Entry for Proceedings held on 2/2/2012.)

        Kingsbrook's counsel subsequently sent Ms. John a proposed confidentiality order that would limit access to the names of individuals in Ms. John's "su-su" to Kingsbrook's outside counsel, Kingsbrook's General Counsel Michael McDermott,

and two members of Kingsbrook's Human Resources Department, John

McKeon and Stacey Mohammed-Oliver.  (ECF No. 20, Def. Mem. at

6.)  Ms. John objected to the proposal, stating:

> I am more than willing to produce the names
> that I can recall, only on the basis that
> none of these employees or their names will
> be disclosed to [K]ingsbrook's personnel
> including but not limited to John Mc[K]eon,
> Stacey Mohammed-Oliver and Michael McDermott
> . . . .  I believe that exposing the names
> of these employees to [K]ingsbrooks staffs'
> [sic], will only be subjecting them to the
> same condition (Termination) that Ms. Janet
> Hunt former employee of Kingsbrook was
> exposed to after I released her name to
> Kingsbrook.

(ECF No. 20-21, E-mail from Jillian John to Kristen O'Connor,

dated 2/15/2012, at 2.)  The next day, instead of raising the

issue again with Magistrate Judge Orenstein, Kingsbrook sought

direct review by the district court.  (*See* ECF No. 20, Def.

Mem.)

### C.   Ms. John's Deposition Notes

During Ms. John's deposition on January 27, 2012, Ms.

John took notes in a small yellow notepad.  (ECF No. 20, Def.

Mem. at 4, 13; ECF No. 20-23, Affirmation of John McKeon in

Support of Defendant's Objections to the Magistrate Judge's

Order, dated 2/16/2012 ("McKeon Aff.") ¶ 10.)  According to

Kingsbrook's outside counsel and Kingsbrook's Vice President of

Human Resources, John McKeon, at times during the deposition,

Ms. John reviewed the notes she had taken earlier in the

deposition before answering questions.  (ECF No. 20, Def. Mem. at 4, 13; ECF No. 20-23, McKeon Aff. ¶ 10.)  When Kingsbrook's counsel asked Ms. John to produce those notes, Ms. John refused, stating that they were her "personal notes."  (ECF No. 20-5, John Dep. at 280-81.)  Unable to resolve their dispute, the parties called Magistrate Judge Orenstein, who directed Ms. John to fax a copy of her notes to chambers so that the notes could be preserved for a later discovery ruling.  (*Id.* at 294.)

At the February 2, 2012 status conference, Kingsbrook sought disclosure of Ms. John's notes pursuant to Federal Rule of Evidence 612, arguing that Ms. John had used the notes to refresh her recollection during her testimony.  (ECF No. 19, 2/2/2012 Tr. at 15.)  Magistrate Judge Orenstein denied Kingsbrook's motion to compel production of the notes, finding that they were protected from disclosure as work product, pursuant to Federal Rule of Civil Procedure 26(b)(3).  (*Id.* at 16; *see also* ECF No. 18, Minute Entry for Proceedings held on 2/2/2012.)

On February 16, 2012, Kingsbrook filed the instant appeal of Magistrate Judge Orenstein's Discovery Order.

**DISCUSSION**

I.  **Standard of Review**

A district court may set aside a magistrate judge's order concerning non-dispositive matters only if the order is

"clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). An order is clearly erroneous if the reviewing court, based on all the evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Dorsett v. Cnty. of Nassau*, 800 F. Supp. 2d 453, 456 (E.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)). A magistrate judge's pretrial discovery rulings are generally considered non-dispositive and are reviewed under the "clearly erroneous or contrary to law" standard of review. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (finding that matters involving pretrial discovery are generally considered "'nondispositive' of the litigation" and thus are subject to the "clearly erroneous or contrary to law standard" on review by a district court).

"Pursuant to this highly deferential standard of review, magistrate[] [judges] are afforded broad discretion in resolving discovery disputes and reversal is appropriate only if their discretion is abused." *Dunkin' Donuts Franchised Rests.,*

*LLC v. 1700 Church Ave. Corp.*, No. 07-CV-2446, 2009 U.S. Dist. LEXIS 24367, at *3 (E.D.N.Y. Mar. 24, 2009) (citation and internal quotation marks omitted).  Thus, "a party seeking to overturn a discovery ruling [by a magistrate judge] generally bears a heavy burden."  *Travel Sentry, Inc. v. Trop*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009) (citation and internal quotation marks omitted).

## II. Application

### A.  E-mail Discovery from Ms. Moore and Ms. John

Kingsbrook objects to Magistrate Judge Orenstein's Discovery Order denying Kingsbrook's request to conduct forensic examinations of Ms. Moore's and Ms. John's computers and e-mail accounts, arguing that it is "highly questionable" that the two unique e-mails produced by Ms. Moore and Ms. John are the only e-mail communications among Ms. Moore, Ms. John, and/or Mr. Moore concerning their lawsuits against Kingsbrook.  (ECF No. 20, Def. Mem. at 19.)  As support, Kingsbrook notes that Ms. Moore and Ms. John use Facebook and e-mail regularly, and that all three plaintiffs "have e-mailed Kingsbrook identical and substantially similar documents on multiple occasions," including identical motions seeking permissive joinder, substantially similar settlement demands, and similar deficiency letters.  (*Id.* at 19-20.)  In addition, Kingsbrook questions the efforts Ms. Moore and Ms. John have taken to preserve their e-

mails and to retrieve deleted e-mails.  (*Id.* at 20.)
Accordingly, Kingsbrook explains that its purpose in requesting
forensic examinations of the two plaintiffs' computers and e-
mail accounts is simply to "verify the fact" that they have no
further responsive e-mails.  (*Id.* at 7, 20.)

      The scope of discovery under Federal Rule of Civil
Procedure 26(b) is very broad, encompassing "any nonprivileged
matter that is relevant to any party's claim or defense—
including the existence, description, nature, custody,
condition, and location of any documents or other tangible
things and the identity and location of persons who know of any
discoverable matter."  Fed. R. Civ. P. 26(b)(1).  Nevertheless,
discovery is not unrestricted, and the court must limit
discovery where it is "unreasonably cumulative or duplicative,
or can be obtained from some other source that is more
convenient, less burdensome, or less expensive," "the party
seeking discovery has had ample opportunity to obtain the
information by discovery in the action," or "the burden or
expense of the proposed discovery outweighs its likely benefit."
Fed. R. Civ. P. 26(b)(2)(C).

      Here, Magistrate Judge Orenstein ordered Ms. Moore and
Ms. John to conduct a renewed search of their e-mail accounts
and to provide Kingsbrook with letters confirming that they had
undertaken the required searches and produced all responsive

documents.  In response to the Discovery Order, both Ms. Moore
and Ms. John affirmatively represented to the court and to
Kingsbrook that they conducted the required searches and
produced all documents yielded by those searches.  (*See* ECF No.
20-17, Moore 2/9/2012 Letter; ECF No. 20-20, Moore 2/13/2012
Letter; ECF No. 25, [Gemma Moore's] Response to Defendant's
Objections, filed 2/29/2012 ("Moore Opp."), at 2-3; ECF No. 20-
18, John 2/9/2012 Letter; ECF No. 20-21, John 2/14/2012 E-mail;
ECF No. 23, [Jillian John's] Response to Defendant's Objections,
filed 2/17/2012 ("John Opp."), at 3.)  In addition, both
plaintiffs confirmed that they inquired and were told by their
e-mail providers that their deleted e-mails could not be
recovered.  (*See* ECF No. 20-17, Moore 2/9/2012 Letter; ECF No.
25, Moore Opp. at 3; ECF No. 20-18, John 2/9/2012 Letter; ECF
No. 20-21, John 2/14/2012 E-mail.)  Although Ms. John proposed
that she and Kingsbrook participate in a three-way conference
call with her Internet provider to determine whether the e-mails
from her suspended e-mail account could be located (ECF No. 20-
21, John 2/14/2012 E-mail), Kingsbrook did not respond to that
proposal, choosing instead to file the instant appeal.  (ECF No.
23, John Opp. at 3.)  Kingsbrook does not explain its failure to
respond to Ms. John's proposal.

        The court has no reason at this time to discredit the
representations made by Ms. Moore and Ms. John.  Further, the

16

forensic examinations sought by Kingsbrook would be duplicative, burdensome, overly broad and intrusive, likely to reveal irrelevant material, and constitute an unnecessary expense.  *See* Fed. R. Civ. P. 26(b)(2)(C).  Moreover, to the extent that Kingsbrook merely seeks confirmation from the plaintiffs' e-mail providers that their old e-mails cannot be retrieved, there are other, less burdensome and less expensive means to obtain such information, such as the conference call proposed by Ms. John. *See id.*  Accordingly, the court finds that Magistrate Judge Orenstein's Discovery Order denying Kingsbrook's motion to conduct forensic examinations of Ms. Moore's and Ms. John's computers and e-mail accounts is not clearly erroneous or contrary to law, and affirms Magistrate Judge Orenstein's denial of the forensic examinations.

**B.   Identity of the Participants in Ms. John's "Su-Su"**

Kingsbrook seeks an order directing Ms. John to disclose the names of the Kingsbrook employees who participated in her "su-su" and permitting Kingsbrook's counsel to share those names with individuals within Kingsbrook, including the General Counsel and members of the Human Resources Department. (ECF No. 20, Def. Mem. at 2, 6, 13-17.)

As an initial matter, the court affirms as neither clearly erroneous nor contrary to law Magistrate Judge Orenstein's Discovery Order that Ms. John must produce the names

of the participants in her "su-su." (*See* ECF No. 19, 2/2/2012 Tr. at 13, 31; ECF No. 18, Minute Entry for Proceedings held on 2/2/2012.) Indeed, insofar as Ms. John has asserted that she never participated in her "su-su" on Kingsbrook's time, Kingsbrook is entitled to know the names of individuals who could support or refute this claim. *See* Fed. R. Civ. P. 26(b).

Second, the court notes that Magistrate Judge Orenstein did not make any definitive ruling as to who may access the names of the participants in Ms. John's "su-su." Nonetheless, Kingsbrook seeks this court's review of Magistrate Judge Orenstein's Discovery Order, including that the parties must meet and confer regarding a reasonable limitation on who may have access to the names, and if they cannot agree on a limitation, they should bring the matter to Magistrate Judge Orenstein's attention. Further, Magistrate Judge Orenstein ordered that if the parties could not resolve the issue, Kingsbrook must submit a written justification for disclosing the "su-su" participants beyond his reasonable and appropriate proposal that only Kingsbrook personnel involved in defending the litigation be provided access. (*See* ECF No. 19, 2/2/2012 Tr. at 13-15, 29-31.)

The record reflects that on February 14, 2012, Kingsbrook's counsel sent Ms. John a proposed confidentiality order, and that on February 15, 2012, Ms. John rejected the

proposal.  (ECF No. 20, Def. Mem. at 6; ECF No. 20-21, John 2/15/2012 E-mail at 2.)  Instead of asking Magistrate Judge Orenstein to resolve the parties' dispute and making further submissions, as the Judge Ordered, however, Kingsbrook filed the instant appeal the very next day, on February 16, 2012. Accordingly, to the extent that Kingsbrook seeks an order clarifying who may access the names of the participants in Ms. John's "su-su," the motion is denied, as such arguments are properly made to Magistrate Judge Orenstein in the first instance.

Moreover, to the extent that Kingsbrook objects to Magistrate Judge Orenstein's Discovery Order directing the parties to confer regarding a reasonable limitation on who may access the names of the participants in Ms. John's "su-su," the court finds that the Order was not clearly erroneous or contrary to law.  Ms. John has expressed a concern that revealing the names of the participants in her "su-su" may subject those individuals to retaliation.  Indeed, to the extent that Ms. John's identification of one individual, Janet Hunt, who participated in a "su-su" at Kingsbrook may have contributed to Ms. Hunt's termination and subsequent lawsuit against Kingsbrook, Ms. John's concern may, in fact, be justified.  (*See* ECF No. 23, John Opp. at 2; *see also generally* ECF No. 34, Letter Motion for Disclosure of "Su-Su" Participants, filed

3/21/2012.)  Although it is not the role of the court to protect those individuals from discipline where appropriately and lawfully imposed, neither is it the court's duty to ensure that Kingsbrook has this information so that it can "investigate the employees alleged to participate in Plaintiff John's 'su-su'" and possibly spawn further litigation.  (ECF No. 20-23, McKeon Aff. ¶ 14.)  Rather, Kingsbrook can seek such information through the internal investigation it has already conducted.  (*See* ECF No. 20, Def. Mem. at 17 n.16.)  Accordingly, the court affirms Magistrate Judge Orenstein's Discovery Order directing Kingsbrook and Ms. John to confer regarding an appropriate confidentiality order with respect to the names of the participants in Ms. John's "su-su."  If the parties remain unable to agree, they are respectfully directed to seek a ruling from Magistrate Judge Orenstein, as he previously ordered.

**C.   Ms. John's Deposition Notes**

Kingsbrook objects to Magistrate Judge Orenstein's Discovery Order denying Kingsbrook's motion to compel production of the notes Ms. John took during her deposition.  Specifically, Kingsbrook argues that the notes are discoverable pursuant to Federal Rule of Evidence 612 because Ms. John reviewed her notes before answering certain questions during her deposition.  (ECF No. 20, Def. Mem. at 4, 13; ECF No. 20-23, McKeon Aff. ¶ 10.)

The court agrees with Magistrate Judge Orenstein that Ms. John's notes are not discoverable pursuant to the work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), which provides qualified immunity from discovery for materials prepared in anticipation of litigation.  Fed. R. Civ. P. 26(b)(3)(A); *Conte v. Cnty. of Nassau*, No. 06-CV-4746, 2009 U.S. Dist. LEXIS 41348, at *5 (E.D.N.Y. May 15, 2009).  To warrant work product protection, the material must be (i) a document or tangible thing; (ii) prepared by a party or a party's representative; and (iii) prepared in anticipation of litigation or trial.  *Id.* (quoting *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560, 2008 U.S. Dist. LEXIS 77018, at *29 (S.D.N.Y. Oct. 2, 2008)).  With respect to the third element of the test, the Second Circuit has instructed that the appropriate inquiry is whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (citation omitted).

Pursuant to Rule 26(b)(3), however, even documents that are protected by the work product doctrine may be discoverable where the discovering party establishes that "it has substantial need for the materials to prepare its case and

cannot, without undue hardship, obtain their substantial
equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A); *see
also Adlman*, 134 F.3d at 1197.

Ms. John's notes fall squarely within the confines of
the work product doctrine. Ms. John's notes constitute a
tangible document created by Ms. John herself during her
deposition, and therefore were clearly prepared in anticipation
of litigation or trial. Indeed, as Ms. John represented to
Kingsbrook and the court, the notes were her "personal notes"
that reflected her own mental impressions of the deposition and
the litigation. (ECF No. 20-5, John Dep. at 280; ECF No. 23,
John Opp. at 1-2.) The fact that Ms. John is proceeding *pro se*
does not diminish the protection afforded to her work product.
*See, e.g.*, *Nielsen v. Soc'y of N.Y. Hosp.*, No. 87 Civ. 8526,
1988 U.S. Dist. LEXIS 14115, at *5 (S.D.N.Y. Sept. 20, 1988)
("If plaintiff were represented by counsel, his attorney's notes
in similar circumstances would not be subject to production. A
plaintiff appearing *pro se* is entitled to no less protection.")
Kingsbrook has not demonstrated that it has a substantial need
for the notes to prepare its case. Further, as Kingsbrook was
permitted to ask Ms. John during her deposition what she was
writing, as well as any other questions about matters relevant
to Ms. John's lawsuit, Kingsbrook has not shown that it could
not obtain the substantial equivalent of Ms. John's notes by

other means.  *See* Fed. R. Civ. P. 26(b)(3); *see also Rubin v. Hirschfeld*, No. 3:00-CV-1657, 2001 U.S. Dist. LEXIS 25442, at *4 (D. Conn. Oct. 22, 2001) (denying motion to compel the production of notes taken by defendant during his deposition where the content of the notes could have been derived from questions posed during the deposition).  Accordingly, Magistrate Judge Orenstein's finding that Ms. John's notes are shielded from discovery by the work product doctrine was neither clearly erroneous nor contrary to law.

In urging disclosure of Ms. John's notes, Kingsbrook argues that the notes are discoverable pursuant to Federal Rule of Evidence 612, which entitles an adverse party to discover a writing that a witness uses to refresh his or her memory "while testifying."  Fed. R. Evid. 612.  In support, Kingsbrook cites *Thomas v. Euro RSCG Life*, 264 F.R.D. 120, 122 (S.D.N.Y. 2010), where the court found that the plaintiff had waived the attorney-client privilege when she "relied on" certain notes provided by her attorney "in connection with her deposition testimony."  *Thomas*, however, is distinguishable from the instant case in that the deponent in *Thomas* admitted that she had "review[ed] the notes for approximately fifteen minutes immediately prior to her deposition" and that she did so in order to refresh her recollection about certain conversations that were central to her deposition testimony.  *Id.*  Here, in

contrast, the notes were created contemporaneously with Ms. John's deposition, and therefore Ms. John could not have used them to refresh her recollection prior to her deposition.

Further, in order for a party to be deemed to have waived the protection afforded by Federal Rule of Civil Procedure 26(b)(3) or another privilege, there must be some evidence that the witness actually used the document to refresh his or her recollection, or that the document otherwise had an impact on his or her testimony. *See Bank Hapoalim, B.M. v. Am. Home Assurance Co.*, No. 92 Civ. 3561, 1994 U.S. Dist. LEXIS 4091, at *16-17 (S.D.N.Y. Apr. 6, 1994) ("Before ordering production of privileged documents, courts require that the documents 'can be said to have had sufficient "impact" on the [witness'] testimony to trigger the application of Rule 612.'" (citation omitted)); *accord In re Rivastigmine Patent Litig.*, 486 F. Supp. 2d 241, 244 (S.D.N.Y. 2007) ("[The court's] *in camera* review of the disputed documents indicates that the portions redacted on the ground of privilege are unlikely to have influenced Dr. Williams' testimony with respect to the issues for which she was designated to testify."). *Cf. Jolly v. Coughlin*, No. 92 Civ. 9026, 1995 U.S. Dist. LEXIS 11944, at *3 (S.D.N.Y. Aug. 21, 1995) ("This court's review of the document *in camera* and the deposition testimony shows that the note was used during testimony to prompt the witness's actual

testimony."). Moreover, Rule 612 also provides that "[i]f the producing party claims that the writing includes unrelated matter, the court must examine the writing *in camera*, delete any unrelated portion, and order that the rest be delivered to the adverse party." Fed. R. Evid. 612(b).

Here, the notes were created by Ms. John contemporaneously with her testimony, and thus she could not have used them to refresh her recollection about any event that occurred prior to the testimony itself. Although Kingsbrook argues that Ms. John referred back to her notes at various times during the deposition, the court has undertaken an *in camera* review of Ms. John's notes and finds that the notes are void of any content from which the court could find that Ms. John relied on the notes to refresh her recollection during her deposition or that the notes otherwise had an impact on Ms. John's deposition testimony. *See, e.g., Nielsen*, 1988 U.S. Dist. LEXIS 14115, at *4-5 (denying motion to compel production of *pro se* plaintiff's notes made upon review of earlier portions of his deposition that "were not contemporaneous with the acts or transactions out of which the lawsuit arises" and where the record did not support the defendant's allegation that he used the notes to refresh his recollection).

Accordingly, the court finds that Magistrate Judge Orenstein's Discovery Order denying Kingsbrook's motion to

compel production of Ms. John's deposition notes was neither clearly erroneous nor contrary to law, and affirms Magistrate Judge Orenstein's denial of the motion to compel.

<u>**CONCLUSION**</u>

For the reasons stated above, Kingsbrook's objections to Magistrate Judge Orenstein's February 2, 2012 Discovery Order are denied in their entirety, and the Discovery Order is affirmed. Kingsbrook shall serve a copy of the instant Memorandum and Order on Jillian John and Gemma Moore and file a certificate of service by April 2, 2012.

**SO ORDERED.**

Dated:     March 30, 2012
           Brooklyn, New York

_____
                    /s/
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York